

**FILED**

8/23/2021

JMK

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

STEWART, JAMES

Plaintiff                                        CASE# CASE# 1:18-cv-07584

-v-                                              Judge Mary Rowland

JPMorgan Chase & Co /d/b/a

JPMorgan Chase Bank N.A;

FIRST AMERICAN TITLE INSURANCE

COMPANY (FATIC) et. al

Defendants


**PLAINTIFFS' MOTION PURSUANT TO FRCP RULE 59(e) TO ALTER OR AMEND OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b)(c).**

Plaintiff James Stewart respectfully move pursuant to FRCP 59(e) requesting this Court to

enter an order to alter or amend judgment or in the alternative pursuant to Rule 60(b)(c) for

relief from judgment entered on July 26, 2021 in support of the motion Plaintiff states as

follows.


INTRODUCTION

On July 26, 2021, this Court entered an Order (Dkt. # 184 ) in favor of the defendant FATIC

in Case No. 18-cv-07584 with prejudice based on a 12 (b)(6) motion to dismiss, alleging

Plaintiff has not suffered any loss under Count IV and that the statute of limitations for an

Illinois Consumer Fraud Act cause of action for Count V has past.

DISCUSION

THE STANDARD FOR A 12(b)(6) MOTION

**BREACH OF CONTRACT**

In regards to the 12 (b)(6) motion standard, the court must have made a mistake seeing that the case law cited is inapplicable because the case law do not address a 12 (b)(6) motion relating to a contract for title insurance.  For instance, in Zahn v N.Am. Power & Gas LLC, 846 F.3d 875, 877 (7th Cir.2017) (quoting Bell v City of Chicago 835 F.3d 736) that case was dismiss based on a 12 (b)(1) motion for lack of jurisdiction and was remanded by the appeal court with a certified question affirming that the court did in fact have jurisdiction to hear the case.  Furthermore, the motion cannot be used to resolve factual issues or the merits of the case.  The motion is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations that when accepted as true are plausible and rise above mere speculation.  The fact is this 12 (b)(6) motion denies Stewart his day in court.

  In the case at bar, Plaintiff is alleging a breach of contract on the grounds that when Stewart purchase the property the property did not belong to the seller and based on the title insurance contract between the parties Stewart and FATIC the 12(b)(6) motion cases cited for support do not relate to a breach of contract case that is covered under the case law cited. However Plaintiff has provided case law that applies to title insurance *see United States v City of Flint, county of Genesee 346 F.Supp. 1282 (E.D. Mich. 1972) McLaughlin v. ATTORNEYS 'TITLE GUAR. FUND, 378 N.E.2d 355 (Ill. App. Ct. 1978).  The sole object of title insurance is to cover possibilities of loss through defects that may cloud the title. It's not guesswork, nor is it a wager. It is designed to be predicated upon careful examination of the muniments of title, an exhaustive study of the applicable law and the exercise of expert*

*contract draftmanship. Some defects will be disclosed by a search of the public transfer records; others will be disclosed only by a physical examination or a survey of the property itself. Often the existence of title defects will depend upon legal doctrines and judicial interpretations of various applicable statutes. Since the average purchaser has neither the skill nor the means to discover or protect himself against the myriad of defects, he must rely upon an institution holding itself out as a title insurer.*

A defect in ownership or title is said to exist when the aggregate of rights, privileges, and powers known as ownership is subject to the claims of others.  These claims may restrict the use and/or alienation of the property and as a corollary may reduce its market value.  Such is the situation in the case at bar. The purchased by the Stewart, the title to which is insured by FATIC, is subject to the claim of the Express Trust. While the possessory interest of Stewart is not being disturbed at this time, other incidents of ownership are seriously affected. The merchantability of the real estate is impaired by reason of the clouded title. In the event of a subsequent sale by Stewart, the amount realized at a minimum is the face amount of the policy $150,000 must be adjusted in order to satisfy the Express Trust that existed when the property was purchased and that's if in fact the property can be sold by Stewart now that the defect has been discovered.  But whether a subsequent sale occurs, or not, is not determinative of whether the insured suffered loss or damage under the title policy. The policy obligates FATIC to compensate Stewart for losses or damages in accordance with its terms.  In view of the argument FATIC presented, against liability on their policy, a brief look at fundamentals would seem in order.  A title insurance policy is a contract under which the insurer, for a valuable consideration, agrees to indemnify the insured against loss through defects of title, or liens or encumbrances upon the Real Estate in which the insured has an

interest. See Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471, 178 A.2d 1 (1961). Such is the case at bar. Here, we have a situation where Stewart the purchaser of property, worth over $76,000, attempts to protect his investment by purchasing title insurance. The policy seems to be a standard form contract prepared by the insurer FATIC, the purpose of which is to provide coverage for any defect in title that may have existed prior to the purchase, unless specifically excluded.

 " It's plaintiff understanding that Contracts of insurance should receive a practical, reasonable, and fair construction consonant with the apparent object and intent of the parties, viewed in light of their purpose. Lawyers Title Insurance Corp. v. JDC (America) Corp., 52 F.3d 1575 (11th Cir.1995). When construing title policies, as with any insurance policy, courts are not to distort the language of the policy to create ambiguities in order to rewrite the policy. McLaughlin v. Attorneys' Title Guaranty Fund, 61 Ill.App.3d 911, 18 Ill. Dec. 891, 378 N.E.2d 355 (1978). But where doubts or ambiguities in the title policy do exist, they should be liberally construed in favor of the insured. Rackouski v. Dobson, 261 Ill.App.3d 315, 199 Ill. Dec. 875, 634 N.E.2d 1229 (1994).  The court cites Hickey v O'Bannon 287 F.3d 656 (7th Cir. 2002) as case law to support the motion to dismiss however that case was a civil rights case which has different elements for its cause of action then a breach of contract claim.  Then, the court cites Illinois Bible College Association v Anderson 870 F.3d 631 states "To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face" and in this case for a breach of contract claim. "Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

*misconduct alleged." Id. at 678, 129 S.Ct. 1937 (citing Bell Atl. Corp. v. Twombly, 550 U.S.*
*544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))". Lawyers Title Insurance Corp. v. JDC*
*(America) Corp., 52 F.3d 1575 (11th Cir.1995).* Stewart has pleaded facts sufficient to
support each element of the claim for breach of contract to allow a reasonable inference that
FATIC is liable for breach of contract . See *BELL ATLANTIC CORPORATION et al.,*
*Petitioners, v. William TWOMBLY et al.* 127 S.Ct. 550 U.S. 544 1955 (2007) *"Liability*
*under § 1 of the Sherman Act, 15 U.S.C. § 1, requires a "contract, combination ..., or*
*conspiracy, in restraint of trade or commerce." The question in this putative class action is*
*whether a § 1 complaint can survive a motion to dismiss when it alleges that major*
*telecommunications providers engaged in certain parallel conduct unfavorable to*
*competition, absent some factual context suggesting agreement, as distinct from identical,*
*independent action. We hold that such a complaint should be dismissed."* In the case at bar
Stewart has a contract with FATIC with factual context expressed in the title policy and
should not be dismissed. Whether FATIC is liable for breach of title policy is a merits issue
which the court does not address on a motion to dismiss.

Stewart clearly has stated a claim upon which relief could be granted for breach of contract in
¶ 117 – 128 of the third amended complaint which include the following elements.

- First American offered to indemnify Mr. Stewart October 18, 2007.

- As consideration FATIC received a premium.

- Definite and certain terms included "Title to the estate or interest described in Schedule A
  being vested other than as stated therein and any defect in or lien or encumbrance on the title,
  and unmarketability of the title." All of which is operative in this claim.

- Plaintiff has performed all required conditions precedent.

- FATIC has breach its contract.

- Plaintiff has suffered damages of loan proceeds and monthly payments totaling over $242,274.35.

This court favored FATIC on the 12 (b)(6) motion citing inappropriate case law dealing with a breach of contract claim where plaintiff has suffered losses and damages in a sum to be proven upon the trial of this matter. FATIC assertion and unsupported conclusion that since no one has made a claim demanding title to Stewarts home is hogwash and outside the four corners of the Policy. FATIC sign an express contract with Stewart that guarantee:

If Title to the estate or interest describe in Schedule A is vested other than as stated therein Stewart would be covered. In this case title was not vested as stated in Schedule A (Dkt 96 ) because it was vested in the Express Trust (Dkt 96 ) .

In addition, that any defect in or lien or encumbrance on the title would be covered. In the case at bar Stewart's title is defected ad initio and the fact is FATIC contract guaranteed compensation.

Lastly the Unmarketability of the title that FATIC explicitly assured that if title is unmarketable Stewart would be covered by title insurance policy.

Because the contract explicitly define loss or damage as one of the three prongs reference above from Schedule A plaintiff has suffered a loss of 150,000 for the face amount of the

insurance policy, monthly payments, and cost of rehab of the property.  .  Besides Stewart is making the claim to insure his heirs would not be victimized because of the title defects.

In regards to FATIC imaginary claim that "If Griffin's trust or its beneficiaries came to Stewart demanding title to his home, Stewart would likely have a claim.  But that has not happened. No demand has been made, and no demand could be made since it would be barred by the Illinois adverse possession statute. 735 ILCS 5/13-109 ("every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who for 7 successive years continues in such possession, and also, during such time, pays all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of such lands or tenements, to the extent and according to the purport of his or her paper title") (dkt 184 at 5)".  This assertion lacks merit based on case law to support the defense, in addition completely ignore the contract by reason of the contract expressly insuring that the title is legit, there are no defects in the title, and the title is marketable all of which is false. Furthermore, Stewart is making a claim which the contract did not list as an exception.

Regarding the adverse possession statute 735 ILCS 5/13-109 is without merit for two reasons.  First Plaintiff did not acquire the property by adverse possession therefore the statute do not apply See  *THOMAS v. DURCHSLAG | 404 Ill. 581 (1950) | 4ill5811905 | Leagle.com It was necessary for him to establish a possession of that character by clear, positive and unequivocal proof that his possession was adverse, actual, visible, notorious, exclusive, continuous and under a claim of right. (McIntyre v. McIntyre, 287 Ill. 544;*

*Theiner v. Speckin, 290 Ill. 181.) Adverse possession cannot be made out by inference or implication, and the presumptions are all in favor of the true owner. Town of Kaneville v. Meredith, 351 Ill. 620.  Town of Kaneville v. Meredith, 351 Ill. 620 (1933) | Caselaw Access Project; BRANCH v. CENTRAL TRUST CO. 320 id. 432.) This means that the grantor in the deed, and those claiming under him, must prove possession showing some evidence of a claim of ownership different from that which they had prior to the making of the deed. Unless such is shown the Statute of Limitations does not begin to run, and it is impossible, therefore, that it ripen into title. No presumptions are indulged for the benefit of such title but in order that it ripens it must be hostile and adverse in its inception. In order to be hostile and adverse it must be under claim of ownership, hence possession which is not under claim of ownership in its inception cannot ripen into an adverse title. (JACOBI v. JACOBI, SUPRA; JOSEPH v. EVANS,338 Ill. 11.) In the instant case not only is there a lack of proof that the possession of the Youngs was hostile in its inception to that of the Aurora Construction Company and its successors and assigns, but, on the contrary, the evidence shows clearly that it was not hostile, as in the deed from the Youngs to Underwood it was specifically stated that such deed was made subject to the prior deed to the Aurora Construction Company. The possession of Underwood was not hostile in its inception, as he took possession under a deed which did not purport to convey to him the entire title but specifically stated that it was subject to the deed to the Aurora Construction Company. At no time during the possession of either the Youngs or Underwood after the making of the deed to the Aurora Construction Company did either of them make any clear and positive assertion of an adverse right showing a claim of ownership which was definitely brought to the knowledge of the Aurora Construction*

*Company, its successors or assigns. The Statute of Limitations, therefore, could not begin to run while the Youngs and Underwood were in possession.* Furthermore the Express Trust is a private contract that the Statute has no standing pursuant to the Constitution Article 1 Section 10 See Berry v McCourt, 204 N.E.2d 235 240 (1965) the court held that the Express Trust is a contractual relationship base on trust form.

Second, the trust was created June 24, 1974 before the statute was enact therefore do not apply.

**Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1**

Furthermore, if the 12(b)(6) motion was directed at Count V plaintiff has in regards to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq ("ICFA"). Plaintiff has provided case law showing that the statute of limitations is trolled in this case however the court has seemingly dismissed Count V without case law to support its decision. Plaintiff asserts, the statute of limitations for an action under the Act is three years and begins to run when the cause of action accrues. 815 ILCS 505/10a(e) (West 2002). *See Gredell v Wyeth Laboratories Inc. 803 N.E. 2d 541 (Ill. App. Ct 2004) A cause of action generally accrues when the plaintiff suffers injury. Hermitage Corp. v. Contractors Adjustment Co.,* 166 Ill. 2d 72, *77,* 651 N.E.2d 1132, *1135 (1995). A cause of action not filed within the statute of limitations is time barred. 815 ILCS 505/10a(e) (West 2002).*

DISCOVERY RULE
*Plaintiff argued that the discovery rule applied to his cause of action. The discovery rule has been applied in actions filed pursuant to the Consumer Fraud Act. Hermitage Corp., 166 Ill.2d at *547 79, 209 Ill. Dec. 684, 651 N.E.2d at 1136, citing Bradley v.*

*Alpine Construction Co.*, 224 Ill.App.3d 432, 166 Ill. Dec. 695, 586 N.E.2d 653 (1991); *Sommer v. United Savings Life Insurance Co.*, 128 Ill.App.3d 808, 819, 84 Ill. Dec. 77, 471 N.E.2d 606, 615 (1984). The rule generally postpones the starting of the limitations period until it is triggered by plaintiff's discovery of his cause of action. *Hermitage Corp.*, 166 Ill.2d at 82, 209 Ill. Dec. 684, 651 N.E.2d at 1137. The statute of limitations would begin to run "`when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused'" and, at that point, "`the party is under an obligation to inquire further to determine whether an actionable wrong was committed.'" *Hermitage Corp.*, 166 Ill.2d at 86, 209 Ill. Dec. 684, 651 N.E.2d at 1139, quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 52 Ill. Dec. 1, 421 N.E.2d 864, 868 (1981).

*When a plaintiff asserts the discovery rule to delay commencement of the statute of limitations, he has the burden of proving the date of discovery, a factual question for the trial court to resolve. Hermitage Corp., 166 Ill.2d at 85, 209 Ill. Dec. 684, 651 N.E.2d at 1138. Plaintiffs testimony shows that he may have discovered that he might have a cause of action as late as 1986. Applying the discovery rule, the three-year Consumer Fraud Act statute of limitations would thus start to run in 1986 and not expire until 1989, making plaintiffs 1987 suit timely.*

Plaintiff argued that the discovery rule applies to his cause of action regarding the statute of limitations and that he filed his first claim with FATIC December 1, 2016 and was denied February 21, 2017. Plaintiff filed suit against FATIC August 6, 2019 within the statute of

limitations. In Illinois the statute of limitations began when insurance company refused his claim, as this is the first point at which Mr. Stewart realized his injury.

Wherefore Plaintiff move the court to alter or amend pursuant to Rule 59(e) the judgment entered July 26, 2021 under case number 18-cv-07584 or in the alternative move for relief from judgment pursuant to Rule 60(b)(c) so that plaintiff can proceed to discovery and get to the merits of the case.


/s/James Stewart
James Stewart
8132 S Harvard
Chicago Illinois 60620
312 217 0492
Cnajames1961@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2021 a copy of the foregoing document to be

electronically filed with the Clerk of Court who is using the CM/ECF system which will be

sent to all attorneys of record and via email to:

| | |
|---|---|
| **Susan J. Miller Overbey**<br>**Burke, Warren, MacKay & Serritella, P.C.**<br>**330 North Wabash Avenue, 21 st Floor**<br>**Chicago Illinois 60611**<br>**Telephone: 312 840 7000**<br>**Facsimile : 312 840 7900**<br>soverbey@burkelaw.com | **Brian R. Merfeld**<br>**McCalla Raymer Leibert Pierce, LLC**<br>**Street address: 1 N. Dearborn, Suite1200**<br>**City/State/Zip: Chicago, IL 60602**<br>**Bar ID Number: 6280615**<br>**312-676-7368**<br>Email Brian.Merfeld@mccalla.com |
| **Katherine Elisabeth Carlton Robinson**<br>**Schuckit & Associates, P.c.**<br>**4545 Northwestern Drive**<br>**Zionsville, IN 46077**<br>**(317) 363-2400**<br>**Email: krobinson@schuckitlaw.com,**<br>*ATTORNEY TO BE NOTICED* | **Laura K. Rang**<br>**Schuckit & Associates, P.C.**<br>**4545 Northwestern Drive**<br>**Zionsville, IN 46077**<br>**317-363-2400**<br>**Email: lrang@schuckitlaw.com,**<br>*ATTORNEY TO BE NOTICED* |
| **Michael Joseph Sreenan**<br>**Michael J. Sreenan**<br>**1341 West Fullerton Avenue, No. 175**<br>**Chicago, IL 60614**<br>**(773)549-8700**<br>**Email: msreenan@sreenanpc.com,**<br>*ATTORNEY TO BE NOTICED* | **Jamie N. Ward**<br>**JONES DAY**<br>**77 West Wacker**<br>**Chicago, IL 60601.1692**<br>**Telephone: +1.312.782.3939**<br>**Facsimile: +1.312.782.8585**<br>**jamieward@jonesday.com** |
| **J. Robert Weyreter, Esq. (IN #3540549)**<br>**Schuckit & Associates, P.C.**<br>**4545 Northwestern Drive**<br>**Zionsville, IN 46077**<br>**Telephone: 317-363-2400**<br>**Fax: 317-363-2257**<br>**jweyreter@schuckitlaw.com** | |

August 23, 2021